IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

KELLI DENISE GOODE,                )
Individually, and also as the     )
Personal Representative of Troy )
Charlton Goode, Deceased, and     )
as Mother, Natural Guardian,      )
and Next Friend of R.G., a        )
Minor, and also on behalf of      )
all similarly situated persons, )
                                   )
     Plaintiff,                    )
                                   )
v.                                 )      No. 16-02029
                                   )
THE CITY OF SOUTHAVEN, TODD        )
BAGGETT, Individually, JEREMY      )
BOND, Individually, TYLER          )
PRICE, Individually, JOEL RICH, )
Individually, JASON SCALLORN,      )
Individually, STACIE J. GRAHAM     )
a/k/a WITTE, Individually, MIKE )
MUELLER, Individually, WILLIAM     )
PAINTER, JR., Individually,        )
BRUCE K. SEBRING, Individually, )
JOSEPH SPENCE, Individually,       )
RICHARD A. WEATHERFORD,            )
Individually, JOHN DOES 1-10,      )
BAPTIST MEMORIAL HOSPITAL-         )
DESOTO, a Mississippi              )
Corporation, SOUTHEASTERN          )
EMERGENCY PHYSICIANS, INC., a      )
Tennessee Corporation, and         )
LEMUEL DONJA OLIVER, M.D.,         )
                                   )
     Defendants.                   )
                                   )
                                   )

---

ORDER

---

Before the Court is Defendant Lemuel Donja Oliver, M.D.'s
August 25, 2016 Special Appearance Motion to Dismiss Amended
Complaint Because of a Lack of Personal Jurisdiction and
Improper Venue ("Oliver's Motion"). (ECF No. 112 at PageID
921.) Plaintiff Kelli Denise Goode responded on October 26,
2016. (ECF No. 157 at PageID 1203.) Oliver replied on November
4, 2016. (ECF No. 163 at PageID 1317.)

Also before the Court is Defendant Southeastern Emergency
Physicians, Inc.'s ("Southeastern") August 26, 2016 Motion to
Dismiss Plaintiff's First Amended Complaint ("Southeastern's
Motion"). (ECF No. 115 at PageID 942.) Southeastern seeks
dismissal based on improper venue and, should the Court grant
certain Defendants' motions to dismiss, failure to join an
indispensable party under Rule 19 of the Federal Rules of Civil
Procedure.[1] (Id. at PageID 943.) Plaintiff responded on October
26, 2016. (ECF No. 158 at PageID 1230.) Southeastern has not
replied and the time for doing so has passed.

Also before the Court is Defendant Baptist Memorial
Hospital-DeSoto, Inc.'s ("Baptist") August 29, 2016 Motion to
Dismiss or, in the Alternative, to Transfer Venue ("Baptist's
Motion"). (ECF No. 116 at PageID 957.) Baptist seeks dismissal
based on lack of personal jurisdiction and improper venue, and

---

[1] Unless otherwise noted, references to "Rule __" are to the Federal Rules of
Civil Procedure.

it seeks partial dismissal for failure to state a claim upon which relief can be granted on the conspiracy claim and claims arising under 42 U.S.C. § 1983. (Id. at PageID 958-59.) Should the action not be dismissed, Baptist asks that the action be transferred to the United States District Court for the Northern District of Mississippi, Oxford Division, pursuant to 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a). (Id. at PageID 959.) Plaintiff responded on October 31, 2016. (ECF No. 159 at PageID 1244.) Baptist replied on November 16, 2016. (ECF No. 166 at PageID 1345.)

Also before the Court is the August 29, 2016 Motion to Dismiss or, in the Alternative, to Transfer Venue (the "Southaven Defendants' Motion") filed by Defendants City of Southaven, Mississippi; Todd Baggett; Jeremy Bond; Tyler Price; Joel Rich; Jason Scallorn; Stacie J. Graham; Mike Mueller; William Painter, Jr.; Bruce K. Sebring; Joseph Spence; and Richard A. Weatherford (collectively, the "Southaven Defendants"). (ECF No. 117 at PageID 991.) The Southaven Defendants seek dismissal based on lack of personal jurisdiction and improper venue.[2] (Id. at PageID 992-93.) Should the action

---

[2] The Southaven Defendants also seek dismissal for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1). (ECF No. 117 at PageID 991.) Other than citing Rule 12(b)(1), the Southaven Defendants do not address subject-matter jurisdiction. (See ECF No. 117-1 at PageID 996-1005; ECF No. 168 at PageID 1361-68.) As discussed below, the Court has subject-matter jurisdiction. To the extent the Southaven Defendants seek dismissal pursuant

not be dismissed, the Southaven Defendants ask that the action be transferred to the United States District Court for the Northern District of Mississippi, Oxford Division, pursuant to 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a). (Id. at PageID 991-93.) Plaintiff responded on October 31, 2016. (ECF No. 161 at PageID 1296.) The Southaven Defendants replied on November 17, 2016. (ECF No. 168 at PageID 1361.)

For the following reasons, Baptist's Motion and the Southaven Defendants' Motion seeking transfer are GRANTED.

## I.  Background

### A.  Amended Complaint Generally

Plaintiff filed this action on January 13, 2016. (ECF No. 1 at PageID 1.) Plaintiff filed an Amended Complaint on August 15, 2016. (ECF No. 107 at PageID 836.) Plaintiff "seeks damages and injunctive relief based upon the untimely death of Troy Charleton Goode" ("Troy" or "Goode"). (Id. ¶ 1 at PageID 837.)

The following facts are taken from the Amended Complaint. Plaintiff and Troy drove to Southaven, Mississippi, to attend a rock concert. (Id. ¶ 37 at PageID 848.) While at the concert, Goode "came under the influence" after taking LSD and began "to exhibit fear and paranoia." (Id. ¶¶ 37, 44 at PageID 848-49.)

---

to Rule 12(b)(1) for lack of subject-matter jurisdiction, the Southaven Defendants' Motion is DENIED.

Plaintiff and Goode left the concert venue, and Plaintiff began driving Goode back to Memphis, Tennessee, where they resided. (Id. ¶ 37 at PageID 848.)

On the way, "Troy told [Plaintiff] that he could not stay within the confines of the vehicle and opened the door and exited into a parking lot on Goodman [R]oad" in Southaven, Mississippi. (Id. ¶¶ 33, 37 at PageID 847-48.) Southaven Police Department officers arrived on the scene after an unknown caller reported Goode's conduct to the Department. (Id. ¶¶ 37-41 at PageID 848-49.) Plaintiff told Officer Todd Baggett that "Troy was not acting like himself after taking LSD and becoming frightened." (Id. ¶ 44 at PageID 849.) After Officer Jason Scallorn arrived and exited his patrol car, "Troy held up his hands and stated, 'Okay, I'll go.'" (Id. ¶ 46 at PageID 849.) The Amended Complaint alleges that Department Officers used violence against Goode. The Amended Complaint alleges that "Troy had been arrested for public drunkenness and/or disorderly conduct, was unarmed, was not engaged in the commission of any crime, posed no threat to any person and yet Southaven police officers attacked him with a police dog, shocked him in the back with a 'taser' gun, jumped on and straddled his back while he was in a prone (face-down) position, hogtied him and placed him prone." (Id. ¶ 2 at PageID 837.)

A City of Southaven Fire Department ambulance arrived,
along with several other Southaven Defendants. (Id. ¶¶ 95-96 at
PageID 856.)    The Amended Complaint alleges that Southaven
Defendants "picked Troy up by his shackles and placed him face
down on [a] stretcher, still hogtied." (Id. ¶ 97 at PageID
856.)  Goode was strapped to the stretcher, and "[w]hile in [a]
five point restraint, Troy was crying out and struggling to
raise his torso as if unable to breathe." (Id. ¶¶ 98, 100 at
PageID 856.)    The Amended Complaint alleges that none of the
Southaven Defendants "did anything to alleviate the dangerous
constricted posture in which Troy had been placed." (Id. ¶ 101
at PageID 856.)    Goode was transported by ambulance to Baptist
Memorial   Hospital-DeSoto   (the   "Hospital")   in   Southaven,
Mississippi.[3] (Id. ¶¶ 1, 102 at PageID 837, 856.)

The Amended Complaint alleges that Goode arrived at the
Hospital "still prone, strapped down and hogtied." (Id. ¶ 136
at PageID 860.)    Certain Southaven Defendants informed the
Hospital "of Troy's vital signs and that Troy was experiencing
supraventricular     tachycardia,"     a     "life-threatening
cardiopulmonary event." (Id. ¶¶ 138, 140 at PageID 860.)
Oliver was the treating physician at the Hospital. (Id. ¶ 137
at PageID 860.)    The Amended Complaint alleges that neither

---

[3] Baptist is a nonprofit corporation that operates the Hospital. (ECF No. 107
¶ 29 at PageID 846.)

Oliver nor any other agents or employees of Baptist or Southeastern (collectively, the "Hospital Defendants") "order[ed] the Southaven Police and Fire personnel to remove the straps holding Troy to the stretcher or to remove the shackles and handcuffs keeping Troy in a hogtied position." (Id. ¶¶ 24, 145 at PageID 844, 861.) The Amended Complaint alleges that "the Hospital Defendants refused to treat Troy unless he remained in a prone, hogtied position, restrained by law enforcement handcuffs and restraint devices." (Id. ¶ 146 at PageID 861.) The Amended Complaint alleges that the Hospital Defendants left Goode alone in an emergency department room with two Southaven Defendants, Officers Baggett and Joel Rich, and without monitoring by a trained medical professional, and that other Southaven Defendants "filtered in and out of the room while Troy struggled to breathe." (Id. ¶¶ 149-50, 158 at PageID 861-62.) The Amended Complaint alleges that "[o]nly after Troy had stopped breathing did Defendant Rich release Troy from the hogtied position in which he had been restrained." (Id. ¶ 152 at PageID 862.) Despite resuscitation attempts, Goode was pronounced dead approximately 25 minutes later. (Id. ¶ 153 at PageID 862.) The Amended Complaint alleges that LSD did not cause Goode's death; instead, "Defendants, acting in concert with one another, tortured Troy Goode to death." (Id. ¶¶ 222, 231 at PageID 869-70.)

The Amended Complaint asserts numerous claims against
Defendants. It alleges that, "[o]n the date of Troy's death,
the Defendants, acting in concert with one another, entered into
an agreement, expressly or by implication, through their
participation in or condoning of the use of excessive force, use
of deadly force, and other actions . . . to engage in conduct
that was wrongful, intentional, willful, wanton, and designed to
violate the civil and constitutional rights . . . of Troy
Charlton Goode and of the Plaintiff including, but not limited
to, the right to procedural and substantive due process of law,
the right to be free from the excessive use of force, the right
to be free from the unnecessary and unauthorized use of deadly
force, and the right to freely travel," thereby "amount[ing] to
a civil conspiracy to cause harm to and violate the civil and
constitutional rights of Troy and the Plaintiff" (Count I).
(Id. ¶¶ 233-34 at PageID 870-71.)

The Amended Complaint asserts the following claims pursuant
to 42 U.S.C. § 1983: excessive force/unreasonable seizure (Count
II); substantive due process—loss of family relationships (Count
III); deliberate indifference to medical necessity (Count IV);
unconstitutional practices/de facto policy (Count V);
supervisory liability and ratification (Count VI); supervisory
liability—failure to train (Count VII); and injunctive relief—
class action (Count VIII). (Id. ¶¶ 246-303 at PageID 873-88.)

The Amended Complaint asserts the following state law claims: invasion of privacy by the malicious release of expunged records, in violation of Tenn. Code Ann. § 40-32-101 (Count IX); wrongful death due to acts of reckless disregard by Defendants, in violation of Miss. Code Ann. §§ 11-7-13 and 11-46-9 (Count X); intentional and negligent infliction of emotional distress (Count XI); common law outrage (Count XII); and medical malpractice (Count XIV). (Id. ¶¶ 304-25, 339-47 at PageID 888-92, 895-97.) The Amended Complaint also asserts a claim for violation of Plaintiff's right to interstate travel and hospital visitation, "as established by federal regulation and Baptist hospital policies" (Count XIII). (Id. ¶¶ 326-38 at PageID 893-95.)

**B.  Facts Relevant to Venue**

The Amended Complaint alleges the following basis for venue:

> A substantial part of the events and omissions giving rise to this civil action occurred in Memphis, Shelby County, Tennessee; therefore, pursuant to 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 123(c)(2), the proper venue for this action is in the Western Division of the United States District Court of the Western District of Tennessee.

(Id. ¶ 8 at PageID 838.) The Amended Complaint alleges that, although the "initial incident which gives rise to this civil action" occurred in Southaven, Mississippi, "[a]dditional incidents occurred in Shelby County, Tennessee and in Southaven,

9

Mississippi with effects intended to result and in fact
resulting in harm to Plaintiff in Shelby County, Tennessee."
(Id. ¶ 33 at PageID 847.)

In support of Count IX, invasion of privacy by the
malicious release of expunged records, the Amended Complaint
alleges that, "[f]ollowing Troy's death, John Doe #1, who is
believed to be one of the Police Defendants or another member of
the Southaven Police Department, released [Goode's] expunged
records to reporters working with the Commercial Appeal, a
newspaper in Memphis, Tennessee." (Id. ¶ 308 at PageID 888.)
The Amended Complaint alleges that "[t]his release of expunged
records was done intentionally and maliciously, for the purpose
of damaging Troy's reputation and convincing the public that his
death was justified." (Id. ¶ 309 at PageID 888.)

In support of Count XIII, violation of Plaintiff's right to
interstate travel and hospital visitation, the Amended Complaint
alleges that, when Goode was arrested, one or more Southaven
Defendants threatened Plaintiff with arrest and/or threatened to
inflate criminal charges against Goode if Plaintiff attempted to
accompany Goode to the Hospital in the ambulance or drive to the
Hospital on her own and stay with Goode. (Id. ¶¶ 170-73 at
PageID 864.) The Amended Complaint alleges that one or more
Southaven Defendants ordered Plaintiff "to cross the
Mississippi/Tennessee state line and return to her home or face

10

arrest and the inflation of criminal charges against her husband." (Id. ¶ 174 at PageID 864.) It further alleges that "one or more of the Police Defendants followed her in a marked police car until she turned away from the hospital and toward the Mississippi/Tennessee state line." (Id. ¶ 175 at PageID 864.)

The Amended Complaint alleges that, on returning to Tennessee, Plaintiff and her mother-in-law (Goode's mother) made multiple telephone calls to the Hospital seeking information. (Id. ¶¶ 176-77 at PageID 864.) During one call, Plaintiff and Goode's mother reached a nurse at the Hospital who said that Goode was in "stable condition" and "reassured them that he would be fine." (Id. ¶ 178 at PageID 865.) The Amended Complaint alleges that the nurse's statement was false because, at the time, Goode was suffering a serious, life-threatening cardiopulmonary event. (Id. ¶¶ 179-80 at PageID 865.) The Amended Complaint alleges that, "[w]hile on the phone with the nurse, Nikki Goode, Troy's mother, stated that she and [Plaintiff] planned to visit Troy to make sure he was okay." (Id. ¶ 181 at PageID 865.) The Amended Complaint alleges that, "[i]n response, the nurse handed the phone to another individual who, upon information and belief, was one of the Police Defendants." (Id. ¶ 182 at PageID 865.) That individual "then

11

threatened [Goode's mother] and [Plaintiff] with arrest if they entered Mississippi to come to the hospital." (Id.)

In Count XIII, the Amended Complaint alleges that "Defendants, acting individually and in concert with one another . . . deprived [Plaintiff] of her right to travel freely between the states of Tennessee and Mississippi for the purpose of visiting her husband in the hospital." (Id. ¶ 329 at PageID 893.) The Amended Complaint alleges that, during the telephone call discussed above, Defendants "us[ed] communications directed into the state of Tennessee" to relay false information about Goode's physical condition and to threaten Plaintiff and Goode's mother with arrest and inflation of charges against Goode should they enter Mississippi and visit the Hospital. (Id. ¶ 336 at PageID 894.)

## II. Subject-Matter Jurisdiction

Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 for constitutional-rights violations and other violations of federal law. The Court has federal-question jurisdiction under 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the Plaintiff's state law claims under 28 U.S.C. § 1367 because they derive from a "common nucleus of operative fact." See 28 U.S.C. § 1367; United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966).

## III. Venue

### A.    Preliminary Considerations

Defendants' motions include motions to dismiss under Rule 12(b)(2) for lack of personal jurisdiction, under Rule 12(b)(3) for improper venue, under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, and under Rule 12(b)(7) for failure to join a party under Rule 19.  Should the action not be dismissed, Baptist and the Southaven Defendants ask that the action be transferred to the United States District Court for the Northern District of Mississippi, Oxford Division, pursuant to 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a).

Plaintiff argues that Baptist has waived its objections to personal jurisdiction and venue because Baptist has engaged in extensive discovery, sought and obtained a protective order from the Court, and participated in a Rule 26(f) conference and the preparation of a scheduling order.  (ECF No. 159 at PageID 1257-58.)  Citing King v. Taylor, 694 F.3d 650, 658 (6th Cir. 2012), Plaintiff argues that a party may forfeit its objections based on lack of personal jurisdiction and improper venue by creating effort for the court that would be wasted if the case were later transferred on one or both of those grounds.  (Id.)  Baptist argues that it preserved its personal jurisdiction and venue defenses by raising them in its initial filing and that it is

participating in discovery at the express direction of the Court. (ECF No. 166 at PageID 1353-54.)

The "test for finding forfeiture of a personal-jurisdiction," venue, or service-of-process "defense through conduct" requires the court to "consider all of the relevant circumstances." See King, 694 F.3d at 659. In King, "forfeiture . . . was . . . clear" where, "[a]fter including the service defense in his answer, [defendant] was completely silent about it until the summary judgment stage." Id. at 660. Before the Court of Appeals, "[defense] counsel admitted that for 'tactical reasons' she did not bring a motion to dismiss at an earlier stage in the litigation" and "intentionally waited until after the statute of limitations had run before filing her motion." Id. at 651.

Here, Plaintiff filed her Complaint on January 13, 2016. (ECF No. 1 at PageID 1.) On February 19, 2016, in its first filing in this action, Baptist moved to dismiss for lack of personal jurisdiction and improper venue. (ECF No. 31 at PageID 166.) In a June 2, 2016 Scheduling Order, the Court, inter alia, directed the parties to proceed with discovery. (ECF No. 90 at PageID 755.) On June 29, 2016, the Court granted Plaintiff's Motion to Amend Complaint and denied as moot without prejudice Baptist's February 19 motion. (ECF No. 100 at PageID 787; ECF No. 101 at PageID 804.) On August 15, 2016, Plaintiff

14

filed the Amended Complaint.   (ECF No. 107 at PageID 836.)   On August 29, 2016, Baptist again moved to dismiss for lack of personal jurisdiction and improper venue.   (ECF No. 116 at PageID 957.)   Baptist has not waived or forfeited its personal jurisdiction or venue defenses.

Southeastern's Motion seeking dismissal under Rule 12(b)(7) for failure to join a party under Rule 19 is contingent on the Court's granting of certain Defendants' motions to dismiss.   A district court may not address a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted before determining that it has personal jurisdiction over the defendant.   See Bird v. Parsons, 289 F.3d 865, 872-73 (6th Cir. 2002) ("We must therefore decide whether personal jurisdiction exists over the Dotster defendants before proceeding to the merits of the case.").

A district court may rule on a motion to dismiss for improper venue or, in the alternative, to transfer pursuant to 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a) without first ruling on a pending motion to dismiss for lack of personal jurisdiction.   See Loeb v. Bank of Am., 254 F. Supp. 2d 581, 585 (E.D. Pa. 2003) (citing Goldlawr, Inc. v. Heiman, 369 U.S. 463 (1962)) ("I need not determine whether Garten and Fedder are amenable to jurisdiction in Pennsylvania because I hold that, as venue is improper in the Eastern District of Pennsylvania the

case is to be transferred to the District of Maryland."). Section "1406(a) provides the basis for any transfer made for the purpose of avoiding an obstacle to adjudication on the merits in the district court where the action was originally brought." Martin v. Stokes, 623 F.2d 469, 474 (6th Cir. 1980). "That defect may be either improper venue or lack of personal jurisdiction." Id. Section 1404(a) provides the basis for transfer "where both personal jurisdiction and venue are proper." Id.

The first questions are whether any of Plaintiff's claims should be dismissed or, alternatively, transferred to another district for improper venue pursuant to 28 U.S.C. § 1406(a) or, assuming venue is proper, whether any claims should be transferred pursuant to 28 U.S.C. § 1404(a).

**B.   Legal Standards**

A defendant may move to dismiss a claim under Rule 12(b)(3) based on improper venue. Fed. R. Civ. P. 12(b)(3). In addressing a 12(b)(3) motion to dismiss, "[t]he Court may examine facts outside the complaint but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff." Gone to the Beach, LLC v. Choicepoint Servs., Inc.,

434 F. Supp. 2d 534, 536-37 (W.D. Tenn. 2006) (quotation marks
omitted).[4]

 The general federal venue statute, 28 U.S.C. § 1391,
provides:

  **(b)**  **Venue in general.**—A civil action may be brought
   in—

   **(1)**  a judicial district in which any defendant
    resides, if all defendants are residents of
    the State in which the district is located;

   **(2)**  a judicial district in which a substantial
    part of the events or omissions giving rise
    to the claim occurred, or a substantial part
    of property that is the subject of the
    action is situated; or

   **(3)**  if there is no district in which an action
    may otherwise be brought as provided in this
    section, any judicial district in which any
    defendant is subject to the court's personal
    jurisdiction with respect to such action.

28 U.S.C. § 1391(b). "When venue is challenged, the court must
determine whether the case falls within one of the three
categories set out in § 1391(b)." Atl. Marine Constr. Co. v.
U.S. Dist. Court for the W. Dist. of Tex., 134 S. Ct. 568, 577
(2013). "If a plaintiff asserts multiple claims against a
defendant, venue must be proper as to each claim." Reilly v.

---

[4] Citing Gone to the Beach, Baptist argues that, when venue is challenged, the
plaintiff bears the burden of proving that venue is proper. (ECF No. 116-1
at PageID 974.) However, "[t]here is a split of authority among district
courts in the Sixth Circuit regarding who bears the burden of proof when
venue is challenged as improper." Reilly v. Meffe, 6 F. Supp. 3d 760, 765
(S.D. Ohio 2014). The Court need not resolve this issue because, for
purposes of the pending motions, Defendants do not dispute Plaintiff's
factual allegations, only their legal significance.

Meffe, 6 F. Supp. 3d 760, 765 (S.D. Ohio 2014); see also 14D
Wright et al., Federal Practice and Procedure § 3808 (4th ed.
2013) (same); Mafcote Indus., Inc. v. Houchins, No. 98-6248,
2000 WL 32058 (6th Cir. Jan. 7, 2000) (reviewing district
court's venue rulings claim by claim).    Plaintiff argues that
venue is proper in this district under § 1391(b)(2).    (ECF No.
159 at PageID 1260-62.)

Under § 1391(b)(2), "the plaintiff may file his complaint
in any forum where a substantial part of the events or omissions
giving rise to the claim arose; this includes any forum with a
substantial connection to the plaintiff's claim."    First of
Mich. Corp. v. Bramlet, 141 F.3d 260, 263 (6th Cir. 1998).[5]
Courts in this Circuit have "not interpret[ed] this section as
requiring that a plaintiff file a complaint in the district
where the most substantial events giving rise to the claim
occurred."    Capitol Specialty Ins. Corp. v. Splash Dogs, LLC,
801 F. Supp. 2d 657, 671 (S.D. Ohio 2011) (quotation marks
omitted).    "[V]enue may be proper in two or more districts, even
though most of the events occurred in only one of the
districts."    Id. at 672.    "This interpretation of § 1391(b)(2)
is nonetheless limited by the section's substantiality
requirement—only those acts or omissions with substantial,

_____

[5] Bramlet discussed a prior version of § 1391, but the relevant language in
the revised version is the same.  141 F.3d at 263.  See generally Navajo
Health Found.—Sage Mem'l Hosp., Inc. v. Burwell, 86 F. Supp. 3d 1211, 1238-39
(D.N.M. 2015) (comparing pre- and post-2012 versions of § 1391).

rather than tangential, connections to a plaintiff's claims can establish venue." Reilly, 6 F. Supp. 3d at 765-66. "Substantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute." Sazerac Co. v. Hood River Distillers, Inc., No. 3:12CV-79-S, 2012 WL 6645730, *3 (W.D. Ky. Dec. 20, 2012) (quotation marks omitted). "District courts in the Sixth Circuit have . . . considered both the plaintiff's and defendant's activities in analyzing whether venue is proper under § 1391(b)(2)."[6] Reilly, 6 F. Supp. 3d at 767.

If venue is improper, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). "[T]ransfer is generally perceived to further the interests of justice more than dismissal," and "doubts should be resolved in favor of preserving the action, particularly where it appears that venue may be properly laid in the proposed transferee district." Allied Sound, Inc. v. Dukane Corp., 934

---

[6] Citing Pioneer Surgical Tech., Inc. v. VikingCraft Spine, Inc., No. 2:10-cv-251, 2011 WL 64239, at *2 (W.D. Mich. Jan. 7, 2011), Baptist argues that it is the defendant's activities that are relevant, rather than the plaintiff's, in determining where a substantial part of the underlying events occurred. (ECF No. 116-1 at PageID 977.) Courts in this Circuit are split on whether only the defendant's activities are relevant or whether both the defendant's and the plaintiff's activities are relevant for purposes of the substantiality analysis. Ackison Surveying, LLC v. Focus Fiber Solutions, LLC, No. 2:15-CV-2044, 2016 WL 1449456, at *3 (S.D. Ohio Apr. 13, 2016) (collecting cases). The Court need not resolve this issue because, even taking Plaintiff's activities into consideration, venue is proper at most for two of Plaintiff's claims, as discussed below.

19

F. Supp. 272, 276 (M.D. Tenn. 1996).  Whether to dismiss or transfer is within the district court's sound discretion. Bramlet, 141 F.3d at 262.

If venue is proper, then, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  "A district court possesses broad discretion in deciding whether to transfer venue, and the party seeking a transfer under § 1404(a) bears the burden of demonstrating by a preponderance of the evidence that transfer to another district is warranted."  United States v. Gonzales & Gonzalez Bonds & Ins. Agency, Inc., 677 F. Supp. 2d 987, 991 (W.D. Tenn. 2010). District courts "exercise their discretion under § 1404(a) according to an 'individualized, case-by-case consideration of convenience and fairness.'"  Nisby v. Barden Miss. Gaming, LLC, No. 06-2799 Ma., 2007 WL 6892326, at *5 (W.D. Tenn. Sept. 24, 2007) (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)).  Under the preponderance standard, "the movant must show that the forum to which he desires to transfer the litigation is the *more convenient one vis a vis* the plaintiff's initial choice."  Roberts Metals, Inc. v. Fla. Props. Mktg. Grp., Inc., 138 F.R.D. 89, 93 (N.D. Ohio 1991) (quotation marks

omitted).   "The plaintiff's choice of forum will be given deference unless the defendant makes an appropriate showing." Nisby, 2007 WL 6892326, at *2.  "Transfer is inappropriate where the result would simply shift the inconvenience from one party to another."  Id. at *5.  As under Rule 12(b)(3) and 28 U.S.C. § 1406(a), "the court may examine facts outside the complaint, but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff."  Id.

"In determining whether to transfer a case under § 1404(a), the court must first determine whether the claim could have been brought in the transferee district."  B.E. Tech., LLC v. Facebook, Inc., 957 F. Supp. 2d 926, 929 (W.D. Tenn. 2013). "[T]his generally means that the plaintiff has to have had the right to bring its case in the transferee district, which would require proper venue and personal jurisdiction over the defendants in the transferee district."  Gonzales, 677 F. Supp. 2d at 992 (quotation marks omitted).

"Once the court has made this threshold determination, the court must then determine whether party and witness 'convenience' and 'the interest of justice' favor transfer to the proposed transferee district."  Id.  A "district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic

21

integrity and fairness, which come under the rubric of 'interests of justice.'" Moses v. Bus. Card Express, Inc., 929 F.2d 1131, 1137 (6th Cir. 1991). Factors relevant to the private interests of the parties include: "(1) the convenience to the parties; (2) the convenience of witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; and (6) the practical problems indicating where the case can be tried more expeditiously and inexpensively." Smith v. Kyphon, Inc., 578 F. Supp. 2d 954, 962 (M.D. Tenn. 2008) (alterations omitted). Public-interest factors include: "(1) the enforceability of the judgment; (2) practical considerations affecting trial management; (3) docket congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law." Id. A court "may consider any factor that may make any eventual trial easy, expeditious, and inexpensive." Nisby, 2007 WL 6892326, at *5.

## C.   Section 1391(b) Venue Analysis

The Amended Complaint alleges venue under § 1391(b)(2). Defendants argue that, under § 1391(b)(2), venue is not proper in this district because a substantial part of the alleged events or omissions giving rise to the claims did not occur in

22

Tennessee.    (ECF No. 112-1 at PageID 932-33; ECF No. 115-1 at PageID 950; ECF No. 116-1 at PageID 976; ECF No. 117-1 at PageID 1003-04.)   Specifically, Baptist argues that "[t]his case arises out of the death of Mr. Goode and concerns events leading up to his death—the entirety of which, by [Plaintiff's] own admission, occurred in De[S]oto County, Mississippi."   (ECF No. 116-1 at PageID 977.)   Addressing the "primary claims of this action," Baptist contends that "[t]his district is not the location of significant events or omissions but rather the alleged location of several remote, tangential claims that are insufficient to justify venue in this Court."   (Id.)

Plaintiff responds that, "[w]hile the initial events occurred in DeSoto County, the Defendants in this case took actions in Shelby County, Tennessee, as well as actions originating in Mississippi but intended to cause harm and in fact causing that harm in Shelby County."   (ECF No. 159 at PageID 1260-61.)   Plaintiff argues that "Defendants conspired together to violate Plaintiff's right to interstate travel, violate her right and Troy's right to hospital visitation by extending threats of legal action into Tennessee, and disseminate expunged criminal records into the State of Tennessee."   (Id. at PageID 1261.)   Plaintiff does not contend that a substantial part of the events or omissions giving rise to all of her claims occurred in the Western District of

23

Tennessee.   Rather, she argues that Defendants' "actions in Tennessee or directed into Tennessee provide the basis for two independent causes of action, as well as providing support for the remainder of the Complaint" based on the doctrine of pendent or ancillary venue.  (Id.)

Plaintiff cites Reilly to support her pendent venue argument.  (Id.)  Reilly cites Pacer Global Logistics, Inc. v. Nat'l Passenger R.R. Corp., 272 F. Supp. 2d 784 (E.D. Wis. 2003).  Pacer opines that, according to the doctrine of pendent venue, "a claim that is not properly venued standing alone can still be heard by a court as long as another properly venued claim arising out of a common nucleus of operative fact[] is also brought at the same time in the same district."  Id. at 789.  Pacer explains that "[t]he doctrine developed as an analogy to the concept of supplemental jurisdiction whereby a state law claim that could not otherwise be heard in a federal court would be allowed if attached to a factually similar federal claim."  Id.

Pacer applied the pendent venue doctrine in a specific context: "where a special venue provision"—not § 1391(b)—"lays venue of a claim in certain specified districts, such provision controls venue for all claims arising out of the same nucleus of

operative fact[]."[7]  Id. at 790; see also id. at 789 (citing Richard Corn, Note, Pendent Venue: A Doctrine in Search of a Theory, 68 U. Chi. L. Rev. 931 (2001) (discussing circumstances in which courts have applied pendent venue doctrine when adjudicating claims governed by special venue provisions)). Courts have also exercised pendent venue (1) over "claims invoking supplemental jurisdiction under Section 1367" where "a federal claim has an independent basis of venue" and "appended state-law claims . . . share a common nucleus of operative fact with the federal claim" and (2) over a "'subsidiary' claim that shares a common nucleus of operative fact with the primary claim" where "venue is proper for the 'principal' or 'primary' claim." Wright, supra, § 3808.

None of these special circumstances applies in this case. Plaintiff does not rely on any special venue provisions for any of her claims.  She relies on § 1391(b), the general venue statute, for all of her claims.  Plaintiff does not ask the Court to exercise pendent venue over only appended state-law claims over which the Court has subject-matter jurisdiction by virtue of 28 U.S.C. § 1367, the supplemental jurisdiction statute.  Plaintiff instead asks the Court to exercise pendent venue over federal claims having no independent basis for venue.

---

[7]  The special venue provision at issue in Pacer was 49 U.S.C. § 11706(d)(2)(A), governing civil actions against rail carriers under receipts and bills of lading.  See 272 F. Supp. 2d at 788.

25

Plaintiff does not argue that her "principal" or "primary" claims are properly venued and that pendent venue allows the Court to adjudicate merely subsidiary claims.

Baptist argues that the significant events or omissions supporting Plaintiff's primary claims arising from Goode's death occurred solely in Mississippi and that the claims on which Plaintiff relies for venue are remote and tangential. Plaintiff does not dispute that the only claims substantially connected to this district are her interstate travel, hospital visitation, and invasion of privacy claims (Counts IX and XIII) and that those claims are subsidiary rather than primary.

Venue is proper at most for two of Plaintiff's claims.[8] Because pendent venue does not apply, venue is not proper for Plaintiff's other claims (Counts I-VIII, X-XII, XIV).[9]

### D. Sections 1404(a) and 1406(a) Venue Transfer Analysis

It is in the interest of justice to transfer the claims for which venue is not proper in this district. See 28 U.S.C. § 1406(a). Defendants agree that Mississippi has personal jurisdiction over them, and the parties agree that venue for Plaintiff's claims is proper in the United States District Court

---

[8] The parties dispute whether venue is proper for the interstate travel and hospital visitation claim (Count XIII). The Court need not resolve that dispute. Either way, venue is not proper for most of Plaintiff's claims.

[9] If the Court were to consider whether venue is proper for Plaintiff's action as a whole, rather than addressing venue claim-by-claim, venue would be improper because a substantial part of the events or omissions giving rise to the action as a whole did not occur in this district.

for the Northern District of Mississippi, Oxford Division. (ECF No. 116-1 at PageID 982; ECF No. 117-1 at PageID 1000-04; see ECF No. 112-1 at PageID 927-28, 932; ECF No. 115-1 at PageID 950.) Transfer, rather than dismissal, furthers the interest of justice, particularly given that venue is proper in the Northern District of Mississippi. See Allied Sound, 934 F. Supp. at 276.

It is also in the interest of justice to transfer those claims for which venue in this district is proper. See 28 U.S.C. § 1404(a). Defendants agree that Mississippi has personal jurisdiction over them, and the parties agree that venue for Plaintiff's claims is proper in the United States District Court for the Northern District of Mississippi, Oxford Division. Plaintiff had the right to bring its action in the Northern District of Mississippi. See Gonzales, 677 F. Supp. 2d at 992. Baptist argues that Mississippi is the state of residency of every Defendant, the location of the relevant evidence, the locus of the operative facts, and where the vast majority of actual or potential witnesses reside. (ECF No. 116-1 at PageID 982.) Plaintiff does not dispute any of those contentions. Transfer to the Northern District of Mississippi is in the interest of most parties and witnesses. See Moses, 929 F.2d at 1137; Smith, 578 F. Supp. 2d at 962. That district is the location of sources of relevant proof, and Mississippi has an interest in deciding this Mississippi-centric action.

See Smith, 578 F. Supp. 2d at 962.  Although some claims are properly venued in this district, transfer of the entire action to the transferee district avoids the "piecemeal litigation and unnecessary duplication of fees and costs" that would result from a "fragmentation of claims" in two separate lawsuits. Holmgren v. Allen, 886 F. Supp. 641, 643 (N.D. Ill. 1994).

Baptist argues that dismissal rather than transfer is warranted because Plaintiff knowingly filed this action in an improper venue.  (Id. at PageID 978.)  Baptist contends that "[d]ismissal rather than transfer is proper where, as here, the plaintiff has filed a case in the wrong venue rather than one which she 'undoubtedly knew was the correct one all along.'" (Id. at PageID 979 (quoting Stanifer v. Brannan, 564 F.3d 455, 460 (6th Cir. 2009)).)  Baptist argues that, "[s]hould this Court transfer rather than dismiss this case, [Plaintiff] would experience no consequence for her knowing failure to file this case in the correct court, and her actions, should they result only in transfer, would encourage future litigants to engage in similar behavior by giving the impression that no penalty exists for knowingly filing in an improper venue."  (Id. at PageID 980.)  Plaintiff argues that she asserted that venue is proper in this district in good faith.  (ECF No. 159 at PageID 1263.)

In Stanifer, the Court of Appeals addressed "whether the district court abused its discretion in denying the motion filed

28

by plaintiff . . . to transfer venue from the Western District of Kentucky, where the plaintiff resided and where his complaint was filed, to the Northern District of Alabama, where the two defendants resided and where all the events that gave rise to th[e] litigation occurred." 564 F.3d at 456. The plaintiff filed his motion to transfer in response to the defendants' motion to dismiss for lack of personal jurisdiction. Id. The plaintiff did not attempt to establish valid grounds for jurisdiction, and, other than moving to transfer, made no effort to avoid dismissal. Id. In support of his motion to transfer, the plaintiff "failed to offer even one reason, plausible or not, for filing in what was obviously the wrong venue." Id. at 458. The Court held that the district court did not abuse its discretion in denying plaintiff's motion to transfer. Id. at 456.

Baptist's reliance on Stanifer is misplaced. At least one of Plaintiff's claims is properly venued in this district. Baptist's argument is that this district "is not the location of significant events or omissions," not that nothing happened in Tennessee. (ECF No. 116-1 at PageID 977.) Baptist's argument is that the few events that did occur in Tennessee "are insufficient to justify venue in this Court." (Id.) Plaintiff has not "failed to offer even one reason, plausible or not, for filing in what was obviously the wrong venue." Stanifer, 564

29

F.3d at 458.   Plaintiff makes several good faith arguments supporting venue in this district.   Those arguments are plausible.   They simply lack merit.   Nothing warrants departure from the traditional rule that the interest of justice favors transfer over dismissal, particularly given that venue is proper in the proposed transferee district.   See Allied Sound, 934 F. Supp. at 276.   Baptist's arguments for dismissal over transfer are not well taken.

It is in the interest of justice to transfer this action against all Defendants to the United States District Court for the Northern District of Mississippi, Oxford Division.   To the extent they seek transfer, Baptist's Motion and the Southaven Defendants' Motion are GRANTED.   Although Oliver and Southeastern do not expressly seek transfer, asking for dismissal only, the Court may *sua sponte* transfer the claims against them, particularly when they have argued that venue is improper in this district.   Flynn v. Greg Anthony Const. Co., 95 F. App'x 726, 738 (6th Cir. 2003) (noting federal courts' power to transfer cases *sua sponte* under 28 U.S.C. §§ 1404(a) and 1406(a)).

**IV.  Conclusion**

For the foregoing reasons, Baptist's Motion and the Southaven Defendants' Motion seeking transfer are GRANTED.   This case is TRANSFERRED, pursuant to 28 U.S.C. §§ 1404(a) and

1406(a), to the United States District Court for the Northern District of Mississippi, Oxford Division.

So ordered this 30th day of March, 2016.

/s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE